Last case? 211-1223, Plainfield School District v. Brea Community College. Counsel, you may proceed. May it please the Court. Counsel. John Fasola on behalf of the Plainfield School District 202. The issue in this case is whether in a case where the claimant's own treating physician states that her condition is not caused by her employment, is it appropriate for the Commission to then award benefits to that claimant based solely on the contention that job activities can produce symptoms? It is our contention that in setting forth a standard that causation is proved by a production of symptoms, the Commission erroneously endorsed a new standard under the Act. We are asking that this Honorable Court reverse that erroneous standard both as a matter of law and also as a determination that's against the manifest weight of the evidence. The facts in the case are essentially fairly straightforward. The claimant is a 49-year-old custodian. As of October 30, 2006, she had been working with the District for five and a half months. By her own testimony, she has a variety of different job tasks, including cleaning classrooms, wiping blackboards, vacuuming, emptying wastebaskets, cleaning desks and tables, and mopping floors. Her testimony is that she had noticed numbness in her hands, predominantly in her right hand, and that she sought medical treatment with Dr. Pinar on October 30, 2006. She testified that she stopped working for the District in November. The records reflect that her initial medical treatment was a couple of medical visits and six sessions of physical therapy. She then has no treatment for six months. During those six months, she's not working for the District. She tells her doctor when she goes back that her condition is much worse, and there's evidence that she's been working for someone else doing some job activities in the meantime. She's referred to Dr. Welch. Dr. Welch does injections in November 2007, so at this point we're 12 months beyond when she last worked for the District. Ultimately, as you know, she has a carpal tunnel release. Now, she's seen for a Section 12 exam with Dr. Vendor. Dr. Vendor opines specifically that her job activities are variable and not sufficiently forceful to have a causal link to development of carpal tunnel syndrome. Claimant's counsel then solicits a narrative opinion from the treating physician, Dr. Welch. And this is where the plot thickens, because Dr. Welch, in his written opinion, essentially agrees with Dr. Vendor in that he also says that her work duties are, quote, varied and not of sufficient force to have a causal relationship with her carpal tunnel syndrome, end of quote. And so that's essentially a clear, non-causal opinion from her own treating physician. So you've got two non-causal opinions? Correct. And you've got one in her favor? We have no opinion in her favor. The same what Petitioner's counsel and Petitioner is relying upon as their causal connection opinion is that their doctor who says specifically that work duties are varied and not of sufficient force to have a causal relationship with carpal tunnel syndrome goes on to say that it can be, not that it is, but it can be that her symptoms could be aggravated by the activities, but that the condition itself in that circumstance is not materially worsened, just that she's made more symptomatic. So Welch made a claim that the symptoms that her job activities could have aggravated her symptoms and made her more symptomatic. Correct me. Welch did say that at the end of the day. Says that she aggravated her symptoms, but that the condition itself is not worsened. And that's the part that we believe is important, because our contention throughout this case has been it's an error of law for the arbitrator to issue the decision that he did. And what the arbitrator specifically found, not as a determination of facts, but as a legal conclusion, is that a preexisting condition can be accelerated, can be shown by acceleration, aggravation, or the production of symptoms. There's no case law that, as far as I know, there is no standard under the Act, there has never been a standard under the Act, that the production of symptoms without a material worsening of the condition itself represents compensable action. What about CISPRO and Tower Automotive? CISPRO and Tower Automotive are separate and distinguishable for this reason. First of all, in CISPRO, you're dealing with a situation where you don't just have the production of symptoms. What you have in CISPRO is an underlying condition which was aggravated to the point where the doctor actually opined that the condition was caused. The main issue was not whether or not is the production of symptoms enough. The main issue in CISPRO was the standard of whether or not it's the straw that broke the camel's back or they're in such a destabilized condition that anything would have caused this condition. There is a specific opinion from the treating physician in CISPRO that the condition is caused, not just that the symptoms are aggravated, but the condition is caused by the workplace activities. Well, if somebody is arguably asymptomatic before, then they become symptomatic. You're saying that the symptomatic nature and the complaint that the claimant is expressing has nothing to do with an aggravation of an injury. I'm not saying it has nothing to do. What would be the distinction in that is I believe that the production of symptoms can be in instances a factor that can be weighed, for example, by an opining physician to say that the condition was caused by the employment. That's what's not present here. Dr. Welch did not say she has symptoms, and because she has those symptoms, my opinion is that her condition is caused, at least in part, she's got an underlying condition, but her condition that she suffers from now is caused at least in part by the work activities. He didn't say that. He said she's got some symptoms that are produced while she's working, but that the condition itself is not materially worsened. So had the arbitrator in this case taken the position that the production of symptoms is a factor for me to decide that perhaps there is a causal connection, we'd be standing here arguing manifest way. I'd still say I'm right because I still would say that decision is contrary to the manifest way. That's not what he said. What the arbitrator in this case said, he set forth the legal conclusion that aggravation, acceleration, or the production of symptoms constitutes compensability. That's wrong. That's not the standard. Without a finding that there's been an actual material causation of the condition, a material worsening of the condition, the production of symptoms in and of itself is not enough. It's a matter of law. You're saying it is a matter of law. That's the case? Are you saying that or are you saying as a corollary that in the absence of a causal connection opinion, the claimant can't recover? What I'm saying is that the arbitrator's conclusion that production of symptoms equals causation, that's an erroneous statement of law. How about equals aggravation? Pardon? How about equals aggravation? An aggravation of the condition, a material aggravation of the condition, he could find that. I don't think he did in his decision. I think what he says is that production of symptoms is causation. That's how he starts out his findings of law. But in any event, even if he had made that determination and you want to put it into a box where it's manifest way, to the extent that there's no opinion supporting that, then you've got a clear violation of the standard, you know, it's against the standard of the evidence, the manifestation of the evidence. It's clearly contrary to what the facts support, given that there's two physicians who give opinions. One of the physicians who is the respondent to Section 12 examiner says, no, the activities are too varied. They're not forceful. It doesn't cause the condition. And you've got a treating physician who says the same thing. But gives no, the IME respondent to Section 12 examiner, gives no opinion about aggravation. Do you agree with that? He gives no, he gives no opinion about the aggravation of the production of symptoms issue. I know the arbitrator. He gives no opinion about whether or not, he gives no opinion about aggravation at all, does he? I believe, I'd have to review the record again. That's specifically what the arbitrator found. He said Dr. Vender gave no opinion about whether or not the work could have aggravated her condition. I think what he said, and I'm looking, he failed in both his report and his deposition to address, deposition testimony to address whether or not the job could have aggravated Ms. Trevino's symptoms. There's a, again, we're to this, it does aggravate the condition. If you keep reading it, it says to the extent that she was forced to seek treatment and ultimately surgery for her condition. So we've got somebody who's asymptomatic. They become symptomatic at work, doing the job. Okay, given both doctors say her work didn't cause her carpal tunnel syndrome. However, it made her symptomatic and she ultimately needed surgery. That's not compensable? Well, I can address that, Your Honor, by the fact that her own treating physician doesn't give that opinion. He doesn't say that she becomes symptomatic and then she ultimately, because of those symptoms, has surgery. What he says is she has symptoms, she's not materially worsened by the condition, and then 12 months later, after not working for the respondent for 12 months, after working other jobs in the interim, she then has surgery. That link is never made. There's no medical opinion that specifically makes the link that the arbitrator tries to make. The arbitrator makes the link and the commission agrees that those are the facts. Correct. Under the scenario, under the underlying scenario that the arbitrator also finds as a matter of law that aggravation, acceleration, or the production of symptoms is compensable. And he says that specifically. There's no way to say, well, let's not believe what he says or let's not believe what he meant. That's what he says. It's on paper. That's the basis of his decision. Aggravation, acceleration, or production of symptoms is compensable under the Act. That's not the law. Our position is that's an erroneous statement of law. And for that reason, we'd ask this Court to overturn that erroneous conclusion of law. Obviously, we do have manifest weight issues as well. If the Court finds that it's a manifest weight question, I think it's clear, given the totality of the evidence and the totality of the opinions, the findings that the arbitrator makes, they just can't be justified even under a manifest weight statement. But our primary position is you don't need to get there. It's an error of law. It's a misstatement of the law. And it's a decision that's directly premised upon a misstatement of law. So under all the same facts, if the, what you're saying is if the arbitrator would have said and the commission would have adopted it, I'm only considering the production of symptoms as a factor. Yeah. I think what I'm saying is have the arbitrator said, in looking at aggravation, we'll consider some of these things. And the fact that she was asymptomatic before and symptomatic now, assuming you can accept that, that's one of the factors that he entertained. I mean, I still argue that given the doctrine of the law, but then it's manifest weight. It's no longer an error of law. This is just a clear error of law. Thank you. Thank you, counsel. Justices, counsel, may it please the Court. My name is Ryan Theriot. I represent the appellee, Maria Trevino, in this matter. Unfortunately, we're not going to talk, I'm not going to talk today about indentured servitude or cotton picking or guts or courage or any of that. This case is about one thing. It's about manifest weight, simply. And I think we should initially start with the arbitrator's decision in this case. You heard a lot from counsel about production rates. Wait a minute. You said it's about manifest weight, so you completely reject counsel's arguments that we just heard about whether the wrong legal analysis regarding causation was applied? That is correct. There was not a new legal standard applied here. The arbitrator's decision, while it mentions the production of symptoms early on, it says towards the end, Mrs. Trevino's carpal tunnel syndrome was not caused, but aggravated by her work activities for the respondent. It's very clear. We start moving around words about production and what is the manifestation of symptoms and what's this. The work aggravated her carpal tunnel syndrome. It's in the arbitrator's decision. Second to last paragraph, last sentence. What was that based on? He says that Welch never really opined in causal connection. And that is my next point. Dr. Welch does opine. It's in his last paragraph. There's a lot of things at the end of these opinions. Perhaps we didn't get all the way through them. It's my opinion that the symptoms can be aggravated by her activities. However, the carpal tunnel itself is not materially worse and merely made more symptomatic during such activities as described above. He's talking about the worsening of the symptoms as it relates to the carpal tunnel, not a production of symptoms. This is a doctor. He's not a lawyer. He's not familiar with the work comp standards. He treats patients. You're saying it may have been inartfully stated, but it's nevertheless there in substance. Is that what you're saying? That's absolutely correct. He says the carpal tunnel itself was merely made more symptomatic during such activities as described above. So we have the arbitrator. We have Dr. Welch. Nobody's offering a new legal theory of production of symptoms. We have Dr. Vendor, who in his evidence deposition suggests, Well, I didn't know she cleaned chalkboards or whiteboards 18 times a day. I didn't know she wiped desks all throughout the classroom with her dominant hand, the affected hand, which nobody disputes is affected, which Dr. Vendor agrees. I didn't know she cleans the floor with her right hand with a tennis ball to remove scuffs all over the school. I didn't know that. Would it have changed your opinions? No, it wouldn't have. There's very little dispute here. Again, when work renders a preexisting asymptomatic condition, symptomatic, compensable injury is proven. That's been proven here. It's been proven at multiple levels. We have a right-hand dominant custodian. Asymptomatic, there's talk about a claim 13 years prior. She wasn't seeing a doctor for that. In fact, if you want to talk about the reporting of the history, too, reporting of the injuries, she talks to her primary care physician on the first visit. Let me ask you, counsel, the opposing counsel kept zeroing in on the phrase of the commission that the work duties cause the production of symptoms. Is the production of symptoms the functional equivalent of aggravation of a preexisting condition? I believe it is. I believe that's the argument. I believe it is. And that's on page 1 of the arbitrator's decision. But we get to the end where it's even more clear. Her carpal tunnel syndrome was not caused but aggravated by her work activities for the respondent. So we take out production out of that sentence. It was aggravated. Production is simply an opportunity for the respondent to bring this matter before this court, to make arguments that there's a new standard, that there's an expansion of the Workers' Compensation Act, that this will open the floodgates of litigation to all types of claims that haven't occurred before, and it's simply not the case. Again, Welch supports the theory. Dr. Vendor, once he has more facts that he didn't have, doesn't agree. But the commission made certain decisions regarding credibility at that point. They believed Dr. Welch. They believed the report provided to Dr. Cooner. They believed the petitioner. In this case, in order for the decision to be overturned, it needs to be against the manifest weight. There is substantial evidence in support of the commission's decision. It is not against the manifest weight. And for that reason, I respectfully ask that you uphold the decision. Thank you. Thank you, counsel. You may reply. The arbitrator did find that the aggravation, acceleration, or production of symptoms is compensable under the Act. It's in his decision. There's no getting around that. That was the conclusion of law that he made. It's an erroneous conclusion of law. So you're saying it's not the functional equivalent of aggravation? It's not. And here's we've tried to make, and I hate to use kind of a slip or slope argument to say what could result if this is the finding. But we've tried to make analogies throughout the course of this case, obviously unsuccessful. But let me try again. If I have a preexisting condition where I have a herniated disc in my lumbar spine, when I get up here and make this argument and I'm standing before you for 15 minutes, it may very well cause a production of symptoms. It may cause my back to hurt. It may even be annoying enough that I finally decide I'm going to go seek medical treatment because this really is starting to drive me crazy. But that doesn't mean that somehow me standing up here and arguing this case before you caused the herniated disc in my back. It just caused symptoms. There's no way that the production of symptoms in and of itself without a material worsening of the condition can be compensable under the Act. That's not the standard that's been set forth. That's not the standard as I understand it in the State of Illinois. And for that reason, we're asking for the case to be reversed. Counsel, your opposing counsel cited to the sentence from the arbitrator's decision that the carpal tunnel syndrome was not caused but aggravated by her work activities. Yeah. And that's in the contract. How do you get around that? Well, that's in the context of his overall opinion that production of symptoms is enough to show causation. And he goes on to say, citing twice over clean and citing CISPRO, the principle is the same. Petitioner need only to establish that the workplace activities were a causative factor in the resulting increase in symptoms for there to be causal connection. That's where that logic fails. Thank you, counsel. Thank you. Thank you, counsel, both for your arguments on this matter this afternoon. It will be taken under revisement if this position shall issue. Court will stand in recess until 9 o'clock tomorrow morning.